```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                   CASE NO. 24-CR-20456-JB

 3
      UNITED STATES OF AMERICA,            Miami, Florida
 4
                                           May 5, 2025
 5         vs.
                                           9:20 a.m. - 11:05 a.m.
 6
      ALFRED DAVIS,                         Volume 1 of 1
 7
                   Defendant.              Pages 1 to 60
 8    _____

 9                   TRANSCRIPT OF CHANGE OF PLEA
               BEFORE THE HONORABLE JACQUELINE BECERRA
10                   UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12
      FOR THE GOVERNMENT:          JONATHAN BAILYN
13                                 ASSISTANT UNITED STATES ATTORNEY
                                   99 Northeast 4th Street
14                                 Miami, Florida 33132

15    FOR THE DEFENDANT:           BRIAN ANDREW KIRLEW
                                   The Kirlew Law Firm PLLC
16                                 2103 Coral Way
                                   Suite 401
17                                 Miami, Florida 33145

18
      ALSO PRESENT:  Nashid Sabir
19

20
      STENOGRAPHICALLY REPORTED BY:
21
      VERNITA ALLEN-WILLIAMS, RPR, RMR, FCRR
22    Official Court Reporter to:
      The Honorable Jacqueline Becerra
23    United States District Court
      Southern District of Florida
24    400 North Miami Avenue
      Miami, Florida 33128
25    Vernita_Allen-Williams@flsd.uscourts.gov
```

| | |
|---|---|
| 09:15AM | 1 |
| 09:20AM | 2 |
| 09:21AM | 3 |
| 09:21AM | 4 |
| 09:21AM | 5 |
| 09:21AM | 6 |
| 09:21AM | 7 |
| 09:21AM | 8 |
| 09:21AM | 9 |
| 09:21AM | 10 |
| 09:21AM | 11 |
| 09:21AM | 12 |
| 09:21AM | 13 |
| 09:21AM | 14 |
| 09:21AM | 15 |
| 09:21AM | 16 |
| 09:21AM | 17 |
| 09:21AM | 18 |
| 09:21AM | 19 |
| 09:21AM | 20 |
| 09:21AM | 21 |
| 09:21AM | 22 |
| 09:22AM | 23 |
| 09:22AM | 24 |
| 09:22AM | 25 |

1           (Call to order of the Court at 9:20 a.m.)

2        THE COURTROOM:  We're here on United States v. Davis,

3  Case No. 24-CR-20456.

4        MR. BAILYN:  Good morning, Your Honor.  Assistant U.S.

5  Attorney Jonathan Bailyn on behalf of the United States.  I'm

6  joined by Special Agent Adam Weisenstine of the FBI.

7        THE COURT:  Good morning.

8        MR. KIRLEW:  Good morning, Your Honor.  Brian Kirlew on

9  behalf of Alfred Davis.

10       THE COURT:  Good morning.  Is the government ready to

11  proceed?

12       MR. BAILYN:  We are, Your Honor.

13       THE COURT:  All right.  Mr. Davis last night -- not last

14  night.  I'm sorry.  About 5:40 this morning another counsel came

15  in to file a motion making an appearance, a motion for a

16  continuance, and a motion to dismiss the indictment.

17       Mr. Kirlew, you're the counsel of record.  What say you?

18       MR. KIRLEW:  Judge, what I say is I am not adopting any

19  of those motions.

20       However, I can tell you with conversations this morning

21  that we may be close to a resolution.  So if the Court would be

22  gracious enough to allow me and Mr. Davis and this new counsel a

23  little bit more time in the attorney room, we may be able to enter

24  a change of plea.

25       THE COURT:  All right.  So let me just say a couple

09:22AM  1   things for the record and see where we're at, okay.  Is the other

09:22AM  2   lawyer here?

09:22AM  3              MR. KIRLEW:  He is, Your Honor.

09:22AM  4              THE COURT:  All right.  So, sir, I don't know what

09:22AM  5   experience you have in criminal federal court in Miami, but

09:22AM  6   entering an appearance on the morning of trial is, obviously,

09:22AM  7   disfavored.

09:22AM  8              Sir, you're entitled to a lawyer of your choosing, of

09:22AM  9   course.  This is now your third lawyer that you're trying to get

09:22AM  10  on the morning of trial, and it makes it very difficult.  I have

09:22AM  11  50 jurors waiting outside and, as you know, because you were here,

09:22AM  12  I think, at the calendar call, we're ready for trial today.

09:22AM  13             If this new lawyer -- if you can't get a resolution,

09:22AM  14  you're under no obligation to plead, obviously.  If you want a

09:22AM  15  trial, you will get a trial.  If you want the new lawyer to sit

09:22AM  16  with Mr. Kirlew, I can do that.  I'm not inclined to let him in,

09:23AM  17  dismiss Mr. Kirlew, and continue the trial date because we're

09:23AM  18  ready for trial.  The government's ready for trial.

09:23AM  19             Okay.  Do you understand that?

09:23AM  20             THE DEFENDANT:  Yes.

09:23AM  21             THE COURT:  So if you want to keep chatting for a

09:23AM  22  resolution, how much time do you think you need?

09:23AM  23             MR. KIRLEW:  Can we get until 9:45, Judge?

09:23AM  24             THE COURT:  Sure, I will give you until 9:45.  Like I

09:23AM  25  said, my issue is a jury that I have waiting outside.  Are they

09:23AM   1    all outside ready?

09:23AM   2         THE COURTROOM DEPUTY:  They're coming in.  I'm having

09:23AM   3    them go to the restroom and whatnot and then I will line them up.

09:23AM   4         THE COURT:  Go ahead and use one of our rooms till 9:45;

09:23AM   5    and then if not, I need to pick a jury.

09:23AM   6         MR. KIRLEW:  Understood.

09:23AM   7         THE COURT:  Okay.

09:23AM   8         THE COURTROOM DEPUTY:  Judge, do you want to instruct

09:23AM   9    them not to have contact with the jurors outside?

09:24AM  10         MR. BAILYN:  Also, Your Honor, can I say one thing?  This

09:24AM  11    happened at the last trial.

09:24AM  12         THE COURTROOM DEPUTY:  Wait one moment.

09:24AM  13         MR. BAILYN:  I'm so sorry.  I apologize.

09:24AM  14         THE COURT:  I don't think there is anything the

09:24AM  15    government needs to say right now.  There's motions that have been

09:24AM  16    filed.  I have already said what I expect to do with those

09:24AM  17    motions.

09:24AM  18         If there is not a resolution, then I'm going to hear what

09:24AM  19    the government's position is on the motions and we will go

09:24AM  20    forward.

09:24AM  21         MR. BAILYN:  Your Honor, it has nothing to do the

09:24AM  22    motions; and I didn't mean to interrupt.  I'm so sorry.

09:24AM  23         There's people in the audience that are wearing political

09:24AM  24    slogans; Blacks for Trump t-shirts, Donald Trump sweatshirts.

09:24AM  25    This happened in the last trial.  Judge Martinez found it to be

09:24AM 1  inappropriate.  I think it is.

09:24AM 2         That's all I wanted to raise to the Court's attention.

09:24AM 3         THE COURT:  Well, I don't know who these folks are.  I

09:24AM 4  can't see from here -- maybe I should have better glasses -- what

09:24AM 5  they're wearing.  I don't see how that's an issue or how that's at

09:24AM 6  all relevant.

09:24AM 7         Donna pointed out we do have jurors outside; so if

09:24AM 8  there's friends or family of the defendant or the defendant, just

09:24AM 9  stay in these rooms because I've got a whole group of jurors out

09:25AM 10 there who don't even know what they can or can't do yet; so if you

09:25AM 11 would just stay in the attorney's rooms, I would appreciate that.

09:25AM 12        MR. BAILYN:  Sorry, Your Honor.  Thank you.

09:25AM 13        (Recess at 9:25 a.m.)

09:47AM 14        THE COURT:  All right.  You may be seated.  Mr. Kirlew,

09:47AM 15 where are we?

09:47AM 16        MR. KIRLEW:  Judge, good morning again.  Brian Kirlew on

09:47AM 17 behalf of Alfred Davis.  I want to thank the Court for giving us

09:47AM 18 this time.

09:47AM 19        At this time, Your Honor, we're going to be entering a

09:47AM 20 change of plea to the indictment.

09:47AM 21        THE COURT:  All right.  So this is what we're going to

09:47AM 22 do; we're going to go and change the plea.  There is a plea

09:47AM 23 colloquy you have to do, but we will go ahead and do that, sir.

09:47AM 24        MR. KIRLEW:  Can we do it seated, Judge, or do you want

09:47AM 25 him standing?

```
09:47AM   1        THE COURT:  Oh, he can be seated.  And I will just start
09:47AM   2   by saying what I tell all defendants when we do pleas, I am not in
09:47AM   3   a hurry.  I probably should be because I have plenty of pending
09:47AM   4   cases.  We're going to take as long a time as we need to make sure
09:47AM   5   that you're comfortable with a change of plea and that you answer
09:47AM   6   all the questions that I have for you with respect to the change
09:47AM   7   of plea.  Okay?
09:47AM   8        THE DEFENDANT:  Uh-huh.
09:47AM   9        THE COURT:  The first question I have before we proceed
09:48AM  10   on to the change of plea, with respect to any victims of the
09:48AM  11   offense, government, I assume there is no plea agreement.
09:48AM  12        Is this just a plea to the indictment?
09:48AM  13        MR. BAILYN:  That's correct, Your Honor.
09:48AM  14        THE COURT:  So the reason I ask that question is that
09:48AM  15   typically if there are victims to the offense.
09:48AM  16        Here there could be a financial institution, correct?
09:48AM  17        MR. BAILYN:  Yes, there are.
09:48AM  18        THE COURT:  So if the government is giving somebody a
09:48AM  19   plea deal, usually the victim is given some notice of what that
09:48AM  20   deal is.  There is no deal here, right; you're just pleading
09:48AM  21   straight up to the indictment.
09:48AM  22        But at the time of sentencing, they will get notice that
09:48AM  23   you've pled guilty; and if there are victims to the offense, I'll
09:48AM  24   hear from them.  That doesn't mean I am going to do anything they
09:48AM  25   ask me to do, but they can be heard at the time of sentencing.  So
```

09:48AM 1  that's why I ask that question, okay?

09:48AM 2          THE DEFENDANT:  Uh-huh.

09:48AM 3          THE COURT:  So, Donna, it looks like the defendant is

09:48AM 4  going to take a change of plea.  If you will have the jury just go

09:48AM 5  back to the jury room and wait there.

09:48AM 6          THE COURTROOM DEPUTY:  Okay.  Thank you, Judge.

09:48AM 7          THE COURT:  And then I will let them know when the plea

09:49AM 8  is done.

09:49AM 9          Okay.  I am going to ask you to stand up.  I do need you

09:49AM 10 to take the oath.

09:49AM 11         (The defendant is sworn.)

09:49AM 12         THE DEFENDANT:  I do.

09:49AM 13         THE COURT:  Okay.  You may be seated, sir.

09:49AM 14         There is a reason that I put you under oath.  The reason

09:49AM 15 I put you under oath is I have to ask you all sorts of questions

09:49AM 16 before I accept a different plea, okay.  The law requires that I

09:49AM 17 ask you these questions; it's part of the rules.  All right.

09:49AM 18         But if you give me a false answer, you could be

09:49AM 19 subjecting yourself to another penalty for making a false

09:49AM 20 statement or for perjury; do you understand that?

09:49AM 21         THE DEFENDANT:  Yes.

09:49AM 22         THE COURT:  Now, when this case started, when you first

09:49AM 23 made your initial appearance, you made your initial appearance,

09:49AM 24 they presented the indictment, you entered an appearance, right,

09:49AM 25 at the arraignment; it's either a plea of not guilty or a plea of

09:49AM 1   guilty.  Your lawyer at the time entered a not guilty plea.

09:50AM 2        You may not even remember that because that hearing, I

09:50AM 3   think, takes less than a minute, right.  It's really short; you

09:50AM 4   plead not guilty, your lawyer asks for the discovery, asks for a

09:50AM 5   jury trial, right, it's very short, and enters your plea.

09:50AM 6        When you want to plead guilty though, it's not that easy.

09:50AM 7   So you can't just come in and say "Judge, I plead guilty."  It

09:50AM 8   doesn't work that way.  I have to ask you all these questions

09:50AM 9   first; we have to have the change of plea hearing.

09:50AM 10       And then at the end of that hearing, all right, when I've

09:50AM 11  asked you all the questions, then I'm going to ask you how do you

09:50AM 12  plead; guilty.  Okay.  If at that moment you change your mind,

09:50AM 13  then you change your mind.  We will call the jury and the jury is

09:50AM 14  just waiting in the room.  Not a big deal, okay, and we will

09:50AM 15  start.

09:50AM 16       But I have to go through the entire hearing first, and

09:50AM 17  then it is after the hearing that you can tell me what your plea

09:50AM 18  is; do you understand that?

09:50AM 19            THE DEFENDANT:  Yes, Your Honor.

09:50AM 20            THE COURT:  Now, the questions I am going to ask you are

09:50AM 21  as follows.  They're general questions.

09:50AM 22       I have to ask you, for example, first I have to make sure

09:50AM 23  that you're mentally competent to proceed.  I have no reason to

09:51AM 24  think you're not, okay.  But I ask every defendant the same

09:51AM 25  questions, right, because I have to make sure that you're mentally

09:51AM  1    competent.  I have to make a finding for the record.  Why is that
09:51AM  2    important?  Because when you plead guilty as opposed to going to
09:51AM  3    trial, you waive rights; so I have to make sure that you're
09:51AM  4    competent to waive rights.

09:51AM  5         I have to make sure that you know what the consequences
09:51AM  6    of your plea are.  I have to make sure that you know what the
09:51AM  7    maximum penalties are.  That doesn't mean I'm going to sentence
09:51AM  8    you to the maximum penalties, but you have to know what the
09:51AM  9    maximum penalties are.  I have to make sure there is a factual
09:51AM  10   predicate for the case because unless there is a factual
09:51AM  11   predicate, you can't plead guilty to something you didn't do; so I
09:51AM  12   have to hear from the government as to what the factual predicate
09:51AM  13   is.  And then you're going to have to agree with what the
09:51AM  14   government says; and if you don't agree, then you will tell me "I
09:51AM  15   didn't agree with that," right, and then I will have to see
09:51AM  16   whether or not what you had agreed to is sufficient because,
09:51AM  17   again, you can't plead guilty to something when there are not
09:51AM  18   sufficient facts for the jury to have found you guilty beyond a
09:51AM  19   reasonable doubt.

09:52AM  20        So that's the sequence or just the general topics of what
09:52AM  21   I'm going to talk to you about.  I am talking about the rights
09:52AM  22   that you waive.  We will go through all of that, okay?

09:52AM  23        THE DEFENDANT:  Yes.

09:52AM  24        THE COURT:  As I mentioned to you before, I am not in a
09:52AM  25   hurry.  And why do I say that?  If before you give me an answer to

09:52AM  1   something you need to talk to your lawyer -- and I know the other

09:52AM  2   lawyer that wanted to enter an appearance is still here, he is

09:52AM  3   sitting behind you -- I will give you time to talk to your

09:52AM  4   lawyers.  So if before you answer a question you're not sure how

09:52AM  5   to answer it and you need a minute, tell me you need a minute, and

09:52AM  6   I'll give you whatever time you need.  Okay?

09:52AM  7           THE DEFENDANT:  Okay.

09:52AM  8           THE COURT:  The only thing I'm going to ask is that you

09:52AM  9   not sort of be whispering to your lawyer while I'm talking because

09:52AM  10  then you, obviously, can't really be listening to me, and you

09:52AM  11  can't really be listening to him; so you're half listening to

09:52AM  12  what's going on, which is not what I want to you do.

09:52AM  13          So if you need time, will you let me know?

09:52AM  14          THE DEFENDANT:  Yes, Your Honor.

09:52AM  15          THE COURT:  Also, the questions I'm about to ask you,

09:52AM  16  they're not trick questions, right.  I have them in this book

09:52AM  17  here.  Every judge pretty much asks more or less the same

09:53AM  18  questions.

09:53AM  19          I might ask them in a way that you don't understand.

09:53AM  20  Maybe I'm using too many legal terms, you know.  I don't want you

09:53AM  21  to feel bad about that.  If you don't understand the question,

09:53AM  22  that's on me; that's not on you.  All right.  Don't feel

09:53AM  23  embarrassed, just say "Judge, I don't understand what you're

09:53AM  24  asking me," and I will explain it to you again or I'll let you

09:53AM  25  talk to your lawyer.  Okay.

| | | |
|---|---|---|
| 09:53AM | 1 | THE DEFENDANT:  Yes. |
| 09:53AM | 2 | THE COURT:  So if you don't understand a question, will |
| 09:53AM | 3 | you let me know? |
| 09:53AM | 4 | THE DEFENDANT:  Yes. |
| 09:53AM | 5 | THE COURT:  All right.  Can you state your full name for |
| 09:53AM | 6 | the record. |
| 09:53AM | 7 | THE DEFENDANT:  Alfred Lenoris Davis. |
| 09:53AM | 8 | THE COURT:  Have you ever been known by another name or |
| 09:53AM | 9 | an alias? |
| 09:53AM | 10 | THE DEFENDANT:  Al. |
| 09:53AM | 11 | THE COURT:  How old are you? |
| 09:53AM | 12 | THE DEFENDANT:  51. |
| 09:53AM | 13 | THE COURT:  Where were you born? |
| 09:53AM | 14 | THE DEFENDANT:  Miami, Florida. |
| 09:53AM | 15 | THE COURT:  How far did go in school? |
| 09:53AM | 16 | THE DEFENDANT:  Graduated high school. |
| 09:53AM | 17 | THE COURT:  Can you read and write? |
| 09:53AM | 18 | THE DEFENDANT:  Yes, I can. |
| 09:53AM | 19 | THE COURT:  Have you ever been treated for a mental |
| 09:53AM | 20 | illness or an addiction of any kind? |
| 09:53AM | 21 | THE DEFENDANT:  No. |
| 09:53AM | 22 | THE COURT:  Are you currently under the care or treatment |
| 09:53AM | 23 | of any physician, psychologist, or psychiatrist? |
| 09:54AM | 24 | THE DEFENDANT:  No. |
| 09:54AM | 25 | THE COURT:  Do you believe that you have either a |

```
09:54AM   1   physical condition or a mental condition that would make it
09:54AM   2   difficult for you to understand what's happening today?
09:54AM   3            THE DEFENDANT:  No.
09:54AM   4            THE COURT:  Have you taken any kind of medication in the
09:54AM   5   last 48 hours, including even, like, over-the-counter medication?
09:54AM   6            THE DEFENDANT:  No.
09:54AM   7            THE COURT:  Any kind of narcotic?  Anything that would
09:54AM   8   affect your ability to understand what we're doing?
09:54AM   9            THE DEFENDANT:  No.
09:54AM  10            THE COURT:  Do you feel like you're thinking clearly this
09:54AM  11   morning and that you understand what's happening?
09:54AM  12            THE DEFENDANT:  Yes.
09:54AM  13            THE COURT:  Mr. Kirlew, is there any reason why you think
09:54AM  14   the defendant isn't competent to proceed?
09:54AM  15            MR. KIRLEW:  No, Your Honor.
09:54AM  16            THE COURT:  Does the government have any information with
09:54AM  17   respect to competency?
09:54AM  18            MR. BAILYN:  No, Your Honor.
09:54AM  19            THE COURT:  Based on my observations of the defendant and
09:54AM  20   his responses to my questions, of course, I find that he is
09:54AM  21   clearly alert and he is competent to proceed.
09:54AM  22            All right.  I have to ask you a number of questions about
09:54AM  23   your lawyer, all right, because I want to make sure that you are
09:54AM  24   satisfied with the representation that you've received.
09:55AM  25            He is the second lawyer on the case.  I know you wanted a
```

09:55AM 1    third lawyer to come in, so it's important, right, that I know and

09:55AM 2    that I find that you're comfortable, right, and that you are

09:55AM 3    satisfied rather with the representation that Mr. Kirlew has given

09:55AM 4    you.

09:55AM 5            So the first question I have for you is in this case

09:55AM 6    there was an indictment.  Did Mr. Kirlew -- and I know he was the

09:55AM 7    second lawyer, right, first you had another lawyer -- but did he

09:55AM 8    sit down with you and review the charges in that indictment?

09:55AM 9            THE DEFENDANT:  Yes.

09:55AM 10           THE COURT:  Have you seen and read the indictment?

09:55AM 11           THE DEFENDANT:  Yes.

09:55AM 12           THE COURT:  He has an obligation to have spoken to you

09:55AM 13   about all of the charges, talked to you about the case in general,

09:55AM 14   what the charges are, what the penalties are; you know, if you're

09:55AM 15   found guilty, whether it's by plea or trial, to have reviewed the

09:55AM 16   penalties and reviewed the charges, reviewed what the government's

09:56AM 17   evidence has to be in this kind of case; did he do that?

09:56AM 18           THE DEFENDANT:  Yes.

09:56AM 19           THE COURT:  Now, even when you plead guilty -- and I know

09:56AM 20   that this is a decision for you, at least from the court record

09:56AM 21   perspective -- seems to be recent.  But even if you had wanted to

09:56AM 22   plead the first day you met him, he still has an obligation to

09:56AM 23   show you what the government's evidence is and to have reviewed

09:56AM 24   the government's evidence.

09:56AM 25           Did he sit down with you and review -- we call it the

| | |
|---|---|
| 09:56AM | 1 |
| 09:56AM | 2 |
| 09:56AM | 3 |
| 09:56AM | 4 |
| 09:56AM | 5 |
| 09:56AM | 6 |
| 09:56AM | 7 |
| 09:56AM | 8 |
| 09:56AM | 9 |
| 09:56AM | 10 |
| 09:56AM | 11 |
| 09:56AM | 12 |
| 09:57AM | 13 |
| 09:57AM | 14 |
| 09:57AM | 15 |
| 09:57AM | 16 |
| 09:57AM | 17 |
| 09:57AM | 18 |
| 09:57AM | 19 |
| 09:57AM | 20 |
| 09:57AM | 21 |
| 09:57AM | 22 |
| 09:57AM | 23 |
| 09:57AM | 24 |
| 09:57AM | 25 |

discovery.  It's just the evidence that the government's required to give him.  Did he sit down and review that evidence with you?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Kirlew, did you sit with him and review all the discovery you've received from the United States?

MR. KIRLEW:  Yes, Your Honor, and all the trial exhibits as well.

THE COURT:  Because we already had trial exhibits; so did you look at all those trial exhibits?

THE DEFENDANT:  Yes.

THE COURT:  All right.  The government in this case because we're so ready to go to trial, they actually had a witness list, too.  Did you look at the government's witness list as well?

THE DEFENDANT:  I didn't see the witness list.

THE COURT:  Okay.  But you saw the exhibits?

THE DEFENDANT:  Yes, I saw them.

THE COURT:  Okay.

MR. KIRLEW:  Your Honor, just to be clear, I didn't tell him exactly who the witnesses are but I told him from what agencies and what they would be testifying to; so there would be a person from the IRS that would testify, there would be different individuals that would authenticate or explain certain exhibits that were in the trial binder.

THE COURT:  Which in this case is what's important because it doesn't matter if it's IRS agent A or B; it's an IRS

| | |
|---|---|
| 09:57AM | 1 |
| 09:57AM | 2 |
| 09:57AM | 3 |
| 09:57AM | 4 |
| 09:57AM | 5 |
| 09:57AM | 6 |
| 09:58AM | 7 |
| 09:58AM | 8 |
| 09:58AM | 9 |
| 09:58AM | 10 |
| 09:58AM | 11 |
| 09:58AM | 12 |
| 09:58AM | 13 |
| 09:58AM | 14 |
| 09:58AM | 15 |
| 09:58AM | 16 |
| 09:58AM | 17 |
| 09:58AM | 18 |
| 09:58AM | 19 |
| 09:58AM | 20 |
| 09:58AM | 21 |
| 09:58AM | 22 |
| 09:58AM | 23 |
| 09:58AM | 24 |
| 09:58AM | 25 |

1  agent that's going to say X, right.  Different cases, that might

2  be a different situation, right.  Because if it were a case, for

3  example, where an eyewitness would be important, then you would

4  want to know which witnesses are available.  It's not that kind of

5  case, okay, so you looked at the exhibits.

6      Did he review with you and discuss with you possible

7  defenses; how you were going to defend this case at trial?  Did

8  you have those conversations with him?

9      THE DEFENDANT:  Yes.

10      THE COURT:  Are there any questions that you had for him

11  about the case that he was not able to answer for you?

12      THE DEFENDANT:  No.

13      THE COURT:  Was there anything that you asked him to do

14  in this case that he didn't do for you?

15      THE DEFENDANT:  No.

16      THE COURT:  All right.  Look, this is a public hearing.

17  People are welcome to watch the proceedings.

18      If you're all going to talk, I'm going to ask that you

19  not do that because you're mumbling or saying things that I can

20  hear it up here and it's distracting; so I will ask people in the

21  gallery to please remain silent as we proceed with the plea

22  hearing.

23      Have you had any issues communicating with him?

24      THE DEFENDANT:  No.

25      THE COURT:  Is there anything about his representation of

16

| | | |
|---|---|---|
| 09:59AM | 1 | you that you are concerned with? |
| 09:59AM | 2 | THE DEFENDANT:  No. |
| 09:59AM | 3 | THE COURT:  Have you been satisfied with the |
| 09:59AM | 4 | representation he gave you? |
| 09:59AM | 5 | THE DEFENDANT:  Yes. |
| 09:59AM | 6 | THE COURT:  All right.  Now again, this morning I had a |
| 09:59AM | 7 | motion by another lawyer that wanted to come in.  I don't want to |
| 09:59AM | 8 | interfere in terms of asking you for attorney-client |
| 09:59AM | 9 | communication; I just want to make sure that you are comfortable |
| 09:59AM | 10 | with Mr. Kirlew, that you don't have any issues with Mr. Kirlew, |
| 09:59AM | 11 | and that you've been satisfied with the representation he's given |
| 09:59AM | 12 | you to date. |
| 09:59AM | 13 | THE DEFENDANT:  Yes. |
| 09:59AM | 14 | THE COURT:  Have you been satisfied? |
| 09:59AM | 15 | THE DEFENDANT:  Yes. |
| 09:59AM | 16 | THE COURT:  All right.  Let's go through the maximum |
| 09:59AM | 17 | penalties, all right. |
| 09:59AM | 18 | So in federal court the way the sentencings work is a |
| 09:59AM | 19 | little different than maybe in some other courts or in state |
| 09:59AM | 20 | court.  When you plead guilty in federal court, you plead guilty |
| 10:00AM | 21 | without knowing what your sentence is going to be, right.  So it's |
| 10:00AM | 22 | not like you plead to a ten-year or a five-year or a two-year. |
| 10:00AM | 23 | That's not the way it works, okay.  It doesn't work like that in |
| 10:00AM | 24 | any courtroom, at least in this district, and I don't think it |
| 10:00AM | 25 | works like that anyplace, and that's because federal sentencings |

10:00AM  1    function in a different way than maybe you might have heard or

10:00AM  2    sometimes people just get a notion of things from watching TV or

10:00AM  3    something like that, that's not how it works in the federal

10:00AM  4    system.

10:00AM  5            So I am the judge that's going to sentence you.  I don't

10:00AM  6    know how I'm going to sentence you.  And it's not like I'm

10:00AM  7    tricking you, it's not like I have some idea that I don't want to

10:00AM  8    tell you.  I don't know how I'm going to sentence you because the

10:00AM  9    way that sentencings work is this:  If you plead guilty, after you

10:00AM 10    plead guilty the probation office is going to prepare a report for

10:00AM 11    me.  That report is going to tell me everything from, like, where

10:00AM 12    you went to elementary school, literally, to what your involvement

10:00AM 13    was in this case and everything in between, all right.  It's to

10:01AM 14    give me information so that I can make the best decision I can.

10:01AM 15            They also give me their recommendation on how the Federal

10:01AM 16    Sentencing Guidelines apply to your case.  And the Federal

10:01AM 17    Sentencing Guidelines is like a point system, and it will give me

10:01AM 18    the recommended months of incarceration, if any, that are

10:01AM 19    recommended given the crime at issue.  But all of that is

10:01AM 20    advisory; none of that is mandatory.  So I can sentence you below

10:01AM 21    that range, right.  I'll make the final decision as to how you're

10:01AM 22    sentenced.

10:01AM 23            But obviously I can't have any idea now of what I'm going

10:01AM 24    to sentence you to because I don't have any of that information in

10:01AM 25    front of me, right; so that's why it is that you plead guilty and

10:01AM 1   you don't know what your sentence is going to be; but I am

10:01AM 2   obligated to tell you what the maximum penalties are.  And again,

10:01AM 3   that doesn't mean that I am going to sentence you to the maximum

10:01AM 4   penalty; but if I were to, you could appeal me, right; but you

10:01AM 5   can't withdraw your plea and then demand a trial, so you need to

10:01AM 6   understand what the maximum penalties for each count is; so I want

10:02AM 7   to go through that with you now.

10:02AM 8        So the government in this case charged you with three

10:02AM 9   counts of wire fraud; three counts of wire fraud.  The maximum is

10:02AM 10  20 years imprisonment for each count, followed by three years of

10:02AM 11  supervised release.  The maximum fine is $250,000.  There is also

10:02AM 12  forfeiture and restitution that are applicable under the statute.

10:02AM 13       Forfeiture is when I order you to give the government

10:02AM 14  back some money as part of the penalty as part of the case;

10:02AM 15  restitution is when you give back money to the victim of the case,

10:02AM 16  okay.  That's just what the statute allows for.  Do you understand

10:02AM 17  that those are the maximum penalties for each of the wire fraud

10:02AM 18  counts?

10:02AM 19       THE DEFENDANT:  No.  Can you explain that to me, Your

10:03AM 20  Honor?

10:03AM 21       THE COURT:  Right.  So for wire fraud the maximum count

10:03AM 22  is 20 years imprisonment.  Do you understand that that's the

10:03AM 23  maximum imprisonment charge for each of the wire fraud counts?

10:03AM 24       THE DEFENDANT:  Yes.

10:03AM 25       THE COURT:  I will break them up because I did say a lot

10:03AM    1    there.

10:03AM    2         The other thing is supervised release.  What is

10:03AM    3    supervised release?  If you plead guilty or are found guilty by a

10:03AM    4    jury, right, and you get a term of incarceration, after a term of

10:03AM    5    incarceration, we call it supervised release.  You know, it's like

10:03AM    6    being on probation; except probation is when you don't have any

10:03AM    7    incarceration; you go straight to probation.

10:03AM    8         If you have a period of incarceration, you serve that

10:03AM    9    time, but then you go to supervised release.  It's essentially

10:03AM   10    probation but after a period of incarceration.  I can only give

10:03AM   11    you three years of that.  I can't give you more.  I can give you

10:03AM   12    less, but I can give you up to three.  Do you understand that?

10:03AM   13         THE DEFENDANT:  Yes.

10:03AM   14         THE COURT:  And what happens with supervised release or

10:03AM   15    probation is if you violate your conditions of probation or you

10:04AM   16    violate your conditions of supervised release, you could be

10:04AM   17    sentenced to a term of imprisonment.  So let's say you get

10:04AM   18    probation in this case.  You violate probation, I can still send

10:04AM   19    you to prison.

10:04AM   20         Let's say that I sentence you to a term of prison.

10:04AM   21    You're done with prison, but then you have your supervised

10:04AM   22    release.  You violate supervised release, I can send you back to

10:04AM   23    prison.  Do you understand that?

10:04AM   24         THE DEFENDANT:  Yes.

10:04AM   25         THE COURT:  Then the fine, it's a maximum fine of

10:04AM  1   $250,000.  There's three counts, so I could do it for each count,

10:04AM  2   okay.  Both the prison term, the supervised release term, the

10:04AM  3   fine, I have to make finding that you can afford to pay the fine,

10:04AM  4   right.  Sometimes I make the finding if you can't pay a fine, you

10:04AM  5   can't pay a fine, right.  You don't get fined when you can't pay

10:04AM  6   something; but the law allows me to fine you up to $250,000.  Do

10:04AM  7   you understand that?

10:04AM  8            THE DEFENDANT:  Yes.

10:04AM  9            THE COURT:  So that's for Counts 1, 2, and 3.

10:05AM 10            For Count 4 and 5, those are different counts, right.

10:05AM 11   Count 4 and 5 is engaging in transactions in criminally derived

10:05AM 12   property, all right.

10:05AM 13            That's a different statute.  So for those two counts, the

10:05AM 14   maximum term of imprisonment is ten years.  The supervised release

10:05AM 15   is also three years, and the fine is the same; it's $250,000.

10:05AM 16            Do you understand those are the maximum penalties for

10:05AM 17   Counts 4 and 5?

10:05AM 18            THE DEFENDANT:  Yes.

10:05AM 19            THE COURT:  There is also forfeiture and restitution that

10:05AM 20   I could also order as to Counts 4 and 5.  Do you understand that?

10:05AM 21            THE DEFENDANT:  Yes.

10:05AM 22            THE COURT:  Now, the one thing I can guarantee you -- and

10:05AM 23   it's not going to seem like much, but this I have to tell you

10:05AM 24   because I can guarantee you because the law makes me do this --

10:05AM 25   which is a hundred dollars for each count.  So at the time of

21

| | |
|---|---|
| 10:05AM | 1 |
| 10:06AM | 2 |
| 10:06AM | 3 |
| 10:06AM | 4 |
| 10:06AM | 5 |
| 10:06AM | 6 |
| 10:06AM | 7 |
| 10:06AM | 8 |
| 10:06AM | 9 |
| 10:06AM | 10 |
| 10:06AM | 11 |
| 10:06AM | 12 |
| 10:07AM | 13 |
| 10:07AM | 14 |
| 10:07AM | 15 |
| 10:07AM | 16 |
| 10:07AM | 17 |
| 10:07AM | 18 |
| 10:07AM | 19 |
| 10:07AM | 20 |
| 10:07AM | 21 |
| 10:08AM | 22 |
| 10:08AM | 23 |
| 10:08AM | 24 |
| 10:08AM | 25 |

1  sentencing the only thing I can guarantee you in terms of your
2  penalties is that you will have a $500 assessment as part of your
3  sentencing.  Do you understand that?
4       THE DEFENDANT:  Yes.
5       MR. KIRLEW:  Your Honor, if I may just for one second.  I
6  am showing him the indictment because I think he was a little
7  confused on the counts, so I'm showing it to him here in writing
8  so he can see it.
9       For Counts 1 through 3, which is the wire fraud, this is
10  what she was referring to.  And this is Counts 4 through 5.  Do
11  you understand it?
12       (Brief pause to confer with the defendant.)
13       MR. KIRLEW:  All right.  Just to be clear, I could show
14  him the indictment so he could see the counts to make sure that he
15  understood that that's what you were referring to.
16       THE COURT:  Sure.  Do you need additional time to look at
17  that, sir?
18       THE DEFENDANT:  Yes, please.
19       THE COURT:  Sure.  Take the time you need if you want to
20  review the indictment again.
21       (Brief pause to review the indictment.)
22       MR. KIRLEW:  We're ready, Your Honor.
23       THE COURT:  Do you need any more time to go through the
24  indictment or to talk to your lawyer about it?
25       THE DEFENDANT:  No.  We just went through it, Your Honor.

22

| 10:08AM | 1 | THE COURT:  Look, sometimes when you have a plea deal, |

10:08AM 1 THE COURT:  Look, sometimes when you have a plea deal,

10:08AM 2 the government might dismiss a count or something like that.

10:08AM 3 But in this case since there is no deal, you're pleading

10:09AM 4 to each count.  Do you understand that?

10:09AM 5 THE DEFENDANT:  Yes.

10:09AM 6 THE COURT:  A couple little other things to review with

10:09AM 7 you.

10:09AM 8 One, there is no parole board anymore in the federal

10:09AM 9 system.  I will tell you when I first became a judge, I was like

10:09AM 10 "Why do people even talk about parole any more?"  And then

10:09AM 11 literally, like, two weeks later there was some story in the news

10:09AM 12 about somebody asking for parole.  And there is a famous case now

10:09AM 13 in California, the Menendez brothers, that's on the news all the

10:09AM 14 time now; whether the parole board was going to recommend this or

10:09AM 15 that.  We don't have parole in the federal system anymore; so I'll

10:09AM 16 sentence you.  You don't like my sentence, you appeal me to the

10:09AM 17 Eleventh Circuit, all right.  That's how that works.

10:09AM 18 If you get a period of incarceration and there is an

10:09AM 19 issue with the Bureau of Prisons, there are certain things you can

10:09AM 20 take up with the Bureau of Prisons; but otherwise, you know, you

10:09AM 21 have the courts, okay.  There is no parole board.  There is no

10:09AM 22 other entity out there anymore that reviews or reduces sentences

10:09AM 23 or anything like that.  Do you understand that?

10:10AM 24 THE DEFENDANT:  Yes.

10:10AM 25 THE COURT:  All right.  We talked about parole and

10:10AM 1   supervised release -- I'm sorry, probation and supervised release.

10:10AM 2   If you're given probation and violate it, you will go to jail.  If

10:10AM 3   you're given supervised release and you violate it, you can go to

10:10AM 4   jail.

10:10AM 5        What do I mean by "violating it?"  If you get a

10:10AM 6   probationary sentence or you do some time and then you have

10:10AM 7   supervised release, you're out in the community just like -- you

10:10AM 8   have a bond now, so it's pretty much the same thing, right.  So

10:10AM 9   you're on a bond now.  You have conditions to that bond, right.

10:10AM 10  There's things you can't do.  You can't sell this, right, you

10:10AM 11  can't take out a loan, you can't do drugs, you can't get arrested.

10:10AM 12  It's the same thing, all right; so it's very similar to what

10:10AM 13  you've got now.  Okay?

10:10AM 14       THE DEFENDANT:  Yes.

10:10AM 15       THE COURT:  Restitution.  I think I explained to you the

10:10AM 16  difference between forfeiture and restitution.  You understand the

10:10AM 17  difference; one is the government gets the money, the other one is

10:10AM 18  the victim gets the money.  Do you understand that?

10:10AM 19       THE DEFENDANT:  Yes.

10:10AM 20       THE COURT:  So let me tell you about what a felony

10:10AM 21  conviction, right, other --

10:11AM 22       Counsel, I want to make sure if you're leaving because I

10:11AM 23  have noted on the record that you're here.

10:11AM 24       MR. SABIR:  Yes.  Excuse me.

10:11AM 25       THE COURT:  I'm sorry?

24

10:11AM   1           MR. SABIR:  I have to go outside, Judge, for something.

10:11AM   2           THE COURT:  That's fine.  It's just that I represented on

10:11AM   3   the record that your client -- if the defendant wants to talk to

10:11AM   4   you, you're available.

10:11AM   5           MR. SABIR:  I'm not leaving.

10:11AM   6           THE COURT:  Just if something comes up and you need to

10:11AM   7   talk to him, let me know.  We'll come get him.  He's in the back.

10:11AM   8           MR. KIRLEW:  I think it's best that he stay until you're

10:11AM   9   done with the hearing.

10:11AM  10           THE COURT:  I think it's best too because the defendant

10:11AM  11   has a question and is comfortable asking you, I want you to be

10:11AM  12   here.  You're a member of the bar.  You've represented that you

10:11AM  13   wanted to make an appearance, so I'd rather you stay.  Thank you.

10:11AM  14   I appreciate that.

10:11AM  15           All right.  So there are certain things, sir, certain

10:11AM  16   valuable civil rights that you lose when you have a felony

10:11AM  17   conviction, okay.  You lose your right to vote, you lose your

10:11AM  18   right to hold a public office.  If you have a professional

10:11AM  19   license, sometimes a felony conviction means that you could lose

10:12AM  20   that.

10:12AM  21           And you also lose your right to possess a firearm or

10:12AM  22   ammunition.  Now when I say "possess," I don't mean just own.  You

10:12AM  23   can't own a gun and you can't own ammunition, okay.  You also

10:12AM  24   can't possess it.  What does that mean?  It can't be your friend's

10:12AM  25   gun that's in your car, right.  It can't be that you live in a

25

10:12AM    1    house and your partner's gun is in your nightstand, right.  You

10:12AM    2    can't be in possession, control of a weapon.  You lose that when

10:12AM    3    you have a felony conviction.  Do you understand that?

10:12AM    4                 THE DEFENDANT:  Yes.

10:12AM    5                 THE COURT:  And the problem is if you're found to be in

10:12AM    6    possession of a gun or ammunition later, that's a separate charge,

10:12AM    7    right.  You could actually get charged for that.  Everybody else

10:12AM    8    can have a gun and ammunition but you will lose that right once

10:12AM    9    you become a felon, right.

10:12AM   10                 If you have a felony conviction both in state and federal

10:12AM   11    law, at least the way the law is right now, you won't be able to

10:12AM   12    have a firearm.  Do you understand that?

10:12AM   13                 THE DEFENDANT:  Yes.

10:12AM   14                 THE COURT:  All right.  Now, by pleading guilty, of

10:13AM   15    course you take the risk that I'll sentence you to the maximum.

10:13AM   16    And again, I'm not telling you that I will.  I doubt the

10:13AM   17    sentencing guidelines make a recommendation of anywhere near that,

10:13AM   18    okay.

10:13AM   19                 But if you're unhappy with my sentence, as long as I

10:13AM   20    don't go above the maximum, you can't get a trial.  You can appeal

10:13AM   21    me, but you can't at the sentencing say "Judge, I don't like how

10:13AM   22    you sentenced me.  Call the jury.  I want a trial instead."  You

10:13AM   23    won't be able to do that.  Do you understand that?

10:13AM   24                 THE DEFENDANT:  Yes.

10:13AM   25                 THE COURT:  You can't withdraw the plea.

26

10:13AM  1      All right.  So let's talk about the trial.  We were

10:13AM  2  getting ready to start the trial this morning.  I'm sure you know

10:13AM  3  what rights you had in the trial because we were literally getting

10:13AM  4  ready to walk the jury in, but I want to make sure I go through

10:13AM  5  all those rights with you, that you understand them, and that you

10:13AM  6  realize that you lose that if you plead guilty at the end of the

10:13AM  7  hearing.  Okay.

10:13AM  8      First of all, you have a right to persist in your not

10:13AM  9  guilty plea.  You do not have to plead guilty.  You have a right

10:13AM  10  to your not guilty plea.  You have a right to insist that the

10:14AM  11  government show beyond a reasonable doubt that you committed these

10:14AM  12  offenses, and you're entitled to a unanimous jury.  So you're

10:14AM  13  entitled to jurors of your peers to hear the evidence, and they

10:14AM  14  would have to unanimously find you guilty of these counts.  They

10:14AM  15  don't have to find you guilty of all the counts, right?  There's

10:14AM  16  five counts.  They'd have to make a unanimous finding as to each

10:14AM  17  count separately.  Do you understand that?

10:14AM  18      THE DEFENDANT:  Yes.

10:14AM  19      THE COURT:  So you have the right to a trial by jury.

10:14AM  20  You're presumed innocent, right.  That presumption of innocence

10:14AM  21  follows you all through the trial, and it is the government that

10:14AM  22  has the burden to show that you're guilty beyond a reasonable

10:14AM  23  doubt.

10:14AM  24      Because only the government has the duty and a burden and

10:14AM  25  you have the presumption of innocence, you don't have to do

10:14AM  1   anything at the trial.  You don't have to call witnesses, you

10:14AM  2   don't have to do anything, and you certainly do not have to

10:14AM  3   testify.  Because you're presumed innocent and your right -- not

10:15AM  4   only are you presumed innocent, you also don't have to incriminate

10:15AM  5   yourself because your right not to incriminate yourself and to

10:15AM  6   remain silent persists all through the trial.

10:15AM  7        So we would have had the trial, and you could have

10:15AM  8   testified if you wanted to of course; but if you didn't want to

10:15AM  9   testify, that wouldn't have been held against you.  Do you

10:15AM 10   understand that?

10:15AM 11             THE DEFENDANT:  Yes.

10:15AM 12             THE COURT:  Now, at the trial you would have had Mr.

10:15AM 13   Kirlew.  As I mentioned this morning, your other lawyer, I would

10:15AM 14   have allowed his appearance for the trial, right; so you could

10:15AM 15   have had two lawyers if you wanted to here today.  At the trial

10:15AM 16   those lawyers could have made opening statements for you if they

10:15AM 17   wanted, they could have cross-examined the government's witnesses,

10:15AM 18   they could have challenged the evidence, right, so they could have

10:15AM 19   made motions to me, objections on the evidence, they could have

10:15AM 20   helped you testify if you wanted to testify, they would have made

10:15AM 21   closing arguments.

10:15AM 22        They could actually also ask witnesses to testify, right.

10:16AM 23   They could subpoena witnesses; and if those witnesses didn't show,

10:16AM 24   I'd send the marshals to go get them because you have the right to

10:16AM 25   have witnesses testify on your behalf.

| | |
|---|---|
| 10:16AM | 1 |
| 10:16AM | 2 |

1    Do you understand that those are rights you would have

2  had at the trial?

3    And by the way, they also get to cross-examine those

4  witnesses, right, because you have a right to confront the

5  government's witnesses and the government's evidence.  You would

6  have had all of those rights at a trial.  Do you understand that?

7    THE DEFENDANT:  I have a question for my attorney.

8    THE COURT:  Sure.  Speak to Mr. Kirlew.

9    (Brief pause for the defendant to confer with counsel.)

10    THE DEFENDANT:  I understand, Your Honor.

11    THE COURT:  Let's talk about your appellate rights.  When

12  you go to trial, let's assume a jury would have found you guilty,

13  right, you could appeal that finding of guilt, the jury's finding

14  of guilt.

15    You could also appeal -- let's say I ruled against you on

16  a bunch of different things, you could appeal that; right?  You

17  have a whole trial record to appeal.  When you plead guilty, you

18  can still appeal.  You can appeal my sentence.  You can still file

19  appeals; it's just that there is no trial record.  You're not

20  appealing the finding of guilt, you're not appealing the

21  evidentiary issues because there was no trial.

22    So even though you still have appellate rights, what you

23  can attack on appeal changes because here you're saying "I agree

24  that there is sufficient evidence.  I plead guilty," right.  So

25  there is a slight difference there.  You're not challenging the

10:18AM 1   finding of guilt because you're admitting to that guilt if you

10:18AM 2   decide to plead guilty at the end of this hearing.  Do you

10:18AM 3   understand the difference?

10:18AM 4           THE DEFENDANT:  Yes.

10:18AM 5           THE COURT:  And so you understand that if you plead

10:18AM 6   guilty at the end of this hearing, you're not going to have a

10:18AM 7   trial and all these rights that I just described to you that go

10:18AM 8   along, your right to counsel, your right to confront witnesses,

10:18AM 9   your right to remain silent, your right to testify, your right to

10:18AM 10  be presumed innocent, those are the things that you waive?  Your

10:18AM 11  right to a jury, you've waived that; do you understand?

10:18AM 12          THE DEFENDANT:  Yes.

10:18AM 13          THE COURT:  Now, did you speak to Mr. Kirlew about the

10:18AM 14  U.S. Sentencing Guidelines?

10:18AM 15          THE DEFENDANT:  Yes, I spoke to him.  But could we --

10:18AM 16  could I have a moment with him so we can go over that again?

10:19AM 17          THE COURT:  Yes.  Actually, let me explain to you what I

10:19AM 18  need to explain to you, and then I'll let you talk to him.  Okay?

10:19AM 19          THE DEFENDANT:  Okay.

10:19AM 20          THE COURT:  Because the Sentencing Guidelines -- this is

10:19AM 21  the book.  You probably saw this book in his office because every

10:19AM 22  criminal defense lawyer has this book, right?

10:19AM 23          THE DEFENDANT:  Yes.

10:19AM 24          THE COURT:  And the book in the back has this chart with

10:19AM 25  all these numbers on it, right.  You've seen that?

1  10:19AM  THE DEFENDANT:  Yes.

2  10:19AM  THE COURT:  And so what happens with the sentencing

3  10:19AM  guidelines is these five counts, pleading guilty to that count or

4  10:19AM  being found guilty on that count has points, whatever points they

5  10:19AM  are.  At the end we add up those points.  And then, for example,

6  10:19AM  those points, there's different ways to add up points.

7  10:19AM  So for example, in a money case like this one -- this is

8  10:19AM  a financial crime case -- the amount of money, more money, more

9  10:19AM  points.  It's as simple as that, right.  This isn't a conspiracy;

10  10:20AM  but if this were a conspiracy and seven people had been indicted,

11  10:20AM  people who are more culpable get more points; people who have less

12  10:20AM  to do with the conspiracy get less points, okay.

13  10:20AM  When you plead guilty, you're entitled to get less points

14  10:20AM  because you pled guilty.  Sometimes it's two points, sometimes

15  10:20AM  it's three points.  It's not more than that, right?  But we

16  10:20AM  calculate the points.  And then we also look at your criminal

17  10:20AM  history.  So if you have a lot of prior convictions, for example,

18  10:20AM  then that depends -- that guides me to what category I look at.

19  10:20AM  So I'll take all those points, you will get a number.

20  10:20AM  Let's say the number is 15, all right.  So I take the number 15

21  10:20AM  here on the side, the vertical side, and then we will look at your

22  10:20AM  criminal history, which is what comes across.  And then literally

23  10:20AM  it's wherever those two points meet, I will look at numbers.  And

24  10:20AM  these numbers, they're months of incarceration.

25  10:20AM  I take those numbers and I consider them the same way I'm

10:21AM     1    going to consider the nature of the crime.  I'm going to consider

10:21AM     2    a bunch of things; your own history, your own circumstances.  I'm

10:21AM     3    going to try to make sure that the sentence is fair as compared to

10:21AM     4    people who are similarly situated, you know.  I want to make sure

10:21AM     5    the sentence respects the law.  There are a lot of factors I look

10:21AM     6    at; including that big report I talked to you about, the one

10:21AM     7    that's going to tell me what elementary school you went to, I have

10:21AM     8    to read that, and I have to consider everything in there.  At the

10:21AM     9    end of the day I decide what your sentence is.

10:21AM    10         So I use the sentencing guidelines.  I'm required to look

10:21AM    11    at it, and I am required to consider what the guidelines say; I'm

10:21AM    12    not bound by them.  Right.  They're not mandatory.  Do you

10:21AM    13    understand that?

10:21AM    14         THE DEFENDANT:  Yes.

10:21AM    15         THE COURT:  And so probation gives me that

10:21AM    16    recommendation, and that's fine.  The government's going to give

10:21AM    17    me a recommendation, too.  The government is going to tell me

10:21AM    18    "Well, probation is right or probation is wrong.  And, oh, by the

10:22AM    19    way, even if we think the guidelines are this, we think you should

10:22AM    20    sentence him to that."  They get their say at sentencing, but so

10:22AM    21    do you, right.

10:22AM    22         So at sentencing you're going to have read that report,

10:22AM    23    every word of it.  You're going to sit down with your lawyer and

10:22AM    24    have read it.  If you object to things it says, you'll let me

10:22AM    25    know.  I might agree with you.  Sometimes I agree that the report

10:22AM  1   says things or the report concludes things that it shouldn't, and

10:22AM  2   I grant that objection.  But sometimes I disagree with you, and I

10:22AM  3   agree with what the probation report says.  All right.  So at the

10:22AM  4   time of sentencing, if you challenge the probation report, I'll

10:22AM  5   hear it; we'll hear those objections.  I can agree with you or I

10:22AM  6   can disagree with you.

10:22AM  7              But you understand that if I disagree with your

10:22AM  8   calculations because your lawyer will get to tell me what the

10:22AM  9   calculations are.  He may think "Hey, that's the right calculation

10:22AM  10  based on the guidelines, but I still don't think you should

10:22AM  11  sentence him to that you should sentence him to less."  He

10:22AM  12  absolutely can make all those arguments, okay.

10:23AM  13             I will hear all the arguments.  But if I don't agree with

10:23AM  14  the arguments or I sentence you -- I can sentence you above the

10:23AM  15  recommendation.  Probation might say it's X and I might say it's

10:23AM  16  Y.  You understand you can appeal me, but you can't withdraw your

10:23AM  17  guilty plea?  Do you understand that?

10:23AM  18             THE DEFENDANT:  Yes.

10:23AM  19             THE COURT:  All right.  I'll give you a minute to speak

10:23AM  20  to Mr. Kirlew about any other questions that you have about the

10:23AM  21  sentencing guidelines.

10:23AM  22             (Brief pause for the defendant to confer with counsel.)

10:24AM  23             THE COURT:  Government, you should be prepared to address

10:24AM  24  the elements.

10:24AM  25             THE DEFENDANT:  Okay, Your Honor.

10:24AM  1          THE COURT:  Do you have any questions for me about the

10:24AM  2   sentencing guidelines?

10:24AM  3          THE DEFENDANT:  No.

10:24AM  4          THE COURT:  Any more for your lawyer?

10:24AM  5          THE DEFENDANT:  No.

10:25AM  6          THE COURT:  Okay.  There's no plea agreement in this

10:25AM  7   case, obviously, at this point.

10:25AM  8          Let me ask, Mr. Kirlew; did you communicate other plea

10:25AM  9   offers?  I don't know if there was a plea offer in this case.

10:25AM  10         Did you communicate plea offers to him?

10:25AM  11         MR. KIRLEW:  I did, Your Honor, and I advised him that by

10:25AM  12   pleading to the indictment it would not be, obviously, the offer

10:25AM  13   that Mr. Bailyn had extended with certain charges being reduced or

10:25AM  14   the loss amount being capped at a certain number going into it.

10:25AM  15         THE COURT:  So there's no plea agreement in this case.

10:25AM  16   But at some point there had been a plea, and your lawyer says he

10:25AM  17   discussed it with you; is that correct?

10:25AM  18         Don't tell me what the plea was, but did your lawyer talk

10:25AM  19   to you?  Don't tell me what his recommendation was either because

10:25AM  20   I don't want to know what he has told you.  I just want to make

10:25AM  21   sure that you talked about the plea offer that the government

10:25AM  22   gave.

10:25AM  23         THE DEFENDANT:  Yes, we discussed it.

10:25AM  24         THE COURT:  Now, did anybody threaten you in any way to

10:25AM  25   get you to plead guilty this morning?

10:25AM  1    THE DEFENDANT:  No.

10:26AM  2    THE COURT:  Did anybody offer you anything to get you to

10:26AM  3  plead guilty this morning?

10:26AM  4    THE DEFENDANT:  No.

10:26AM  5    THE COURT:  Let's go to the elements of the offense.  Let

10:26AM  6  me tell you how in both a trial or even a guilty plea, when the

10:26AM  7  government charges you -- and here there's five charges, right,

10:26AM  8  three are wire and two are the transacting and the money derived

10:26AM  9  from criminal proceeds, right.

10:26AM  10    Let's start with the wire fraud.  The government's

10:26AM  11  evidence has to show that you committed that offense.  They don't

10:26AM  12  get up here and just say "Oh, it's wire fraud," right.  That law

10:26AM  13  requires for you to have done certain things; and unless they can

10:26AM  14  show that you did each one of those things, a jury can't find you

10:26AM  15  guilty, all right.  They can't.  There has to be enough evidence

10:26AM  16  for a jury to have found you guilty beyond a reasonable doubt.

10:26AM  17    When you plead guilty, I have to find, right, that their

10:27AM  18  evidence was sufficient as to each element of every offense;

10:27AM  19  otherwise, I can't accept your guilty plea.  And the way we do

10:27AM  20  that for purposes of a plea is first we go through the elements,

10:27AM  21  right.  What is it the government would have to show for wire

10:27AM  22  fraud?  What is it that they would have to show for the

10:27AM  23  transacting in criminally derived proceeds?  All right.  So first

10:27AM  24  we're going to go through that, and then I am going to hear from

10:27AM  25  them what the evidence would have been to support those charges.

10:27AM  1   Okay.

10:27AM  2        So first let's go through the elements.  Government.

10:27AM  3   What were the elements -- or what are the elements of the wire

10:27AM  4   fraud?

10:27AM  5        MR. BAILYN:  Your Honor, there's four elements to wire

10:27AM  6   fraud in violation of Title 18, Section 1343.

10:27AM  7        First, the defendant knowingly devised or participated in

10:27AM  8   a scheme to defraud someone by using false or fraudulent

10:27AM  9   pretenses, representations, or promises.

10:28AM  10       Second, those false statements were about a material

10:28AM  11  fact.

10:28AM  12       Third, there was an intent to defraud.

10:28AM  13       And fourth, the defendant transmitted or caused to be

10:28AM  14  transmitted by wire some communication in interstate commerce to

10:28AM  15  help carry out that scheme to defraud.

10:28AM  16       THE COURT:  All right.  So that's wire fraud.  Those are

10:28AM  17  four things they have to prove, right.  And they would have to

10:28AM  18  prove them as to each; Count 1, Count 2, and Count 3.

10:28AM  19       Do you understand what the four elements are; the four

10:28AM  20  things the government would have to prove for wire fraud?

10:28AM  21       THE DEFENDANT:  No.  Can you explain it to me?

10:28AM  22       THE COURT:  I'll explain it to you again.  Look, the

10:28AM  23  government's recitation of the elements is correct.

10:28AM  24       It has a lot of legalese to it, so I am going to try to

10:28AM  25  explain it to you without so much of the legalese.  And then,

10:28AM  1    government, you will let me know if I have sufficiently described

10:28AM  2    them.  And, Mr. Kirlew, I'll hear from you if there is any

10:29AM  3    objection.

10:29AM  4         The first thing they have to show is that you knowingly

10:29AM  5    participated or came up with, right, you either had to have

10:29AM  6    created it or participated in some type of scheme to defraud

10:29AM  7    someone, right.  You have to commit some sort of fraud on

10:29AM  8    somebody.  And to do that, that means you made a false statement

10:29AM  9    or made a false promise, right, that you used some sort of false

10:29AM  10   information.  That's the first thing they have to show.

10:29AM  11        Then they have to show that that falsity, right, whatever

10:29AM  12   was false, was material.  What does that mean?  That means it's

10:29AM  13   important.  So if, for example, on an application instead of

10:29AM  14   saying you were born in March, you said February, well, that

10:29AM  15   probably wasn't material, right.  That probably didn't affect the

10:29AM  16   person who was making the decision.  So they have to show that

10:29AM  17   whatever you said that was false had an impact, was material.

10:30AM  18        Then they have to show that that's what you intended to

10:30AM  19   do; that it wasn't a mistake, right.  People make mistakes; that

10:30AM  20   doesn't mean you committed a crime, right.  So they have to show

10:30AM  21   by use of the evidence that what you did was not a mistake; that

10:30AM  22   you intended to defraud, right.

10:30AM  23        And that that fraud involved the use of wires.  What does

10:30AM  24   that mean?  It could mean an email, right?  It could mean a wire

10:30AM  25   transfer in a bank, right.  It has to be some sort of

|          |    |                                                                              |
|----------|----|------------------------------------------------------------------------------|
| 10:30AM  | 1  | communication that goes across state lines because otherwise it's            |
| 10:30AM  | 2  | not a federal case.  It becomes a federal case when the wires are            |
| 10:30AM  | 3  | used; modes of communication are used from one state to the other.           |
| 10:30AM  | 4  | It can be a phone call, it can be a wire transfer from a bank,                |
| 10:30AM  | 5  | right.  It can be anything like that, but it's got to be something            |
| 10:30AM  | 6  | that goes from, like, you know, State A to State B; otherwise,                |
| 10:31AM  | 7  | it's not a federal offense.                                                  |
| 10:31AM  | 8  | So those are the four things they have to show.  Do you                      |
| 10:31AM  | 9  | understand that?                                                             |
| 10:31AM  | 10 | THE DEFENDANT:  Yes.                                                          |
| 10:31AM  | 11 | THE COURT:  Government, anything to add to my recitation                     |
| 10:31AM  | 12 | of them?                                                                     |
| 10:31AM  | 13 | MR. BAILYN:  No, Your Honor.                                                  |
| 10:31AM  | 14 | THE COURT:  I mean, I'm trying to do it in laymen terms                       |
| 10:31AM  | 15 | that he understands; but I can't be wrong even in laymen's terms.            |
| 10:31AM  | 16 | Mr. Kirlew?                                                                   |
| 10:31AM  | 17 | MR. KIRLEW:  Your Honor, I have no issue with your                           |
| 10:31AM  | 18 | recitation and description of the offense.                                   |
| 10:31AM  | 19 | THE COURT:  Hold on.  It looks like the government has                        |
| 10:31AM  | 20 | one thing.                                                                   |
| 10:31AM  | 21 | MR. BAILYN:  No, and it's not applicable in this case.                        |
| 10:31AM  | 22 | There is this question in the Eleventh Circuit whether or                     |
| 10:31AM  | 23 | not the wire actually has to leave the state or if it's sufficient           |
| 10:31AM  | 24 | for the wire to be used in a channel of interstate commerce.                  |
| 10:31AM  | 25 | THE COURT:  It doesn't apply to these facts, right?                           |

```
10:31AM    1         MR. BAILYN:  No.  That's why when you noticed my face,
10:31AM    2    that was all I was thinking; not applicable.
10:31AM    3         THE COURT:  Look, I don't know the facts the way you all
10:31AM    4    know them, obviously, because I don't have the indictment to look
10:31AM    5    at; but it didn't seem that that would apply.
10:31AM    6         MR. BAILYN:  Not at all.  The way that you described it
10:31AM    7    was perfect.  Thank you.
10:31AM    8         THE COURT:  Okay.  Then let's look at money laundering.
10:31AM    9    That's sort of, like, the casual way of referring to it, we call
10:32AM   10    it money laundering, but the charge wasn't money laundering,
10:32AM   11    right, the charge that's in the indictment.
10:32AM   12         And specifically in the indictment, and I want to be sure
10:32AM   13    that I've got the right terminology, it's engaging in transactions
10:32AM   14    in criminally derived property.  Okay.  That's the charge.  Now,
10:32AM   15    in order for them to have shown that, there are five different
10:32AM   16    things they have to show.
10:32AM   17         I'm going to let the government give you the legal terms.
10:32AM   18    This one is a little easier, right.  If you don't understand that
10:32AM   19    and you need me to explain some of them, I'm happy to do that.
10:32AM   20         THE DEFENDANT:  Thank you.
10:32AM   21         THE COURT:  Government, what are the elements for
10:32AM   22    Counts 4 and 5?
10:32AM   23         MR. BAILYN:  Thank you, Your Honor.  The elements for
10:32AM   24    money laundering, which is engaging in transactions in criminal
10:32AM   25    proceeds, are:
```

10:32AM 1          First, the defendant knowingly engaged or attempted to

10:32AM 2    engage in a monetary transaction;

10:32AM 3          Second, the defendant knew the transaction involved

10:32AM 4    property or funds that were the proceeds of some criminal

10:33AM 5    activity;

10:33AM 6          Third, the property had a value of more than $10,000;

10:33AM 7          Fourth, the property was, in fact, the proceeds of a

10:33AM 8    specified unlawful activity, in this case wire fraud;

10:33AM 9          And fifth, the transaction took place in the United

10:33AM 10   States.

10:33AM 11          And less legalese, money laundering is taking money from

10:33AM 12   a crime and spending it or moving it.

10:33AM 13          THE COURT:  All right.  Do you understand what the

10:33AM 14   government explained?

10:33AM 15          THE DEFENDANT:  You can explain it.

10:33AM 16          THE COURT:  That's okay.  I'm here for that.  I can

10:33AM 17   explain it.

10:33AM 18          So the first thing they have to show is that you engaged

10:33AM 19   or you tried to engage in a money transaction, right.  A money

10:33AM 20   transaction can be anything; it could be going to the bank, it

10:33AM 21   could be making a deposit, making a withdrawal, lending somebody

10:33AM 22   money, you know, it could be even spending it on a business, any

10:34AM 23   transaction, any movement of money, they have to show that.

10:34AM 24          Then they have to show that that money that you were

10:34AM 25   moving came from a criminal activity, okay.  I know sometimes we

10:34AM  1   think of money laundering, like, we think drug money.  Everybody

10:34AM  2   thinks that's laundering money.  That's not what money laundering

10:34AM  3   is, okay; it's any time you're using that money and the money came

10:34AM  4   from a criminal activity.

10:34AM  5          So if that money was a proceeds, let's say, of a bank

10:34AM  6   fraud, right, you applied for a loan, you defrauded the bank, that

10:34AM  7   money you have now, when you use that money, there forward that

10:34AM  8   money that you have was the product of this wire fraud.  All

10:34AM  9   right.  So when you use that money, then that can be a money

10:34AM  10  laundering charge.

10:34AM  11         It has to be more than $10,000.  The money at issue here,

10:34AM  12  because they have to show that that money you were using and

10:34AM  13  moving came from a crime.  They're saying the crime in this case

10:35AM  14  was the wire fraud, all right.  And then that all has to happen in

10:35AM  15  the United States.  Again, if it doesn't happen in the United

10:35AM  16  States, it can't be charged here, okay.

10:35AM  17         So that's what they would have to show.  Do you

10:35AM  18  understand that?

10:35AM  19         THE DEFENDANT:  Yes.

10:35AM  20         THE COURT:  Does the government have any issue with my

10:35AM  21  laymen's terms of it?

10:35AM  22         MR. BAILYN:  No, Your Honor.

10:35AM  23         THE COURT:  Mr. Kirlew?

10:35AM  24         MR. KIRLEW:  I don't, Your Honor.

10:35AM  25         I just want to point for the record to page 4 of the

1    indictment, which is Count 4 and 5, it states specifically what

2    those money transactions were, which were items of discovery and

3    trial exhibits that Mr. Davis did see and go over with me.

4            THE COURT:  Do you understand that it's page 4 of the

5    indictment?  So Count 4 was based on the July 25, 2023, charge.

6    That was $35,000.  That was the cashier's check.

7            And then there is one for August, 2023, August 1st.

8    That's also a cashier's check of $50,000.  Right.  So purchasing a

9    cashier's check, that's a money transaction and those are the two

10   counts and those are the two activities.

11           Do you see it there, sir?

12           THE DEFENDANT:  Yes, I see it.

13           THE COURT:  So now we know what the government had to

14   prove.  Now, I need to listen to what the government's evidence

15   would have been.  Now, I'm going to ask two things here that are

16   really important.

17           One, I'm going to ask the government to speak really

18   slowly; not only just for your benefit but for mine, okay.  I want

19   them to slowly go through the evidence, okay.  When they're done,

20   I'm going to ask you whether you agree.

21           Now, here is something that's important to understand.

22   They're not going to get up or they don't have to get up and talk

23   about every single piece of evidence that they would have shown

24   this jury for the next three days.  They don't have to do that,

25   okay.  They just have to show me enough or say enough to have met

| | |
|---|---|
| 10:36AM | 1 |
| 10:36AM | 2 |
| 10:36AM | 3 |
| 10:36AM | 4 |
| 10:37AM | 5 |
| 10:37AM | 6 |
| 10:37AM | 7 |
| 10:37AM | 8 |
| 10:37AM | 9 |
| 10:37AM | 10 |
| 10:37AM | 11 |
| 10:37AM | 12 |
| 10:37AM | 13 |
| 10:37AM | 14 |
| 10:37AM | 15 |
| 10:37AM | 16 |
| 10:37AM | 17 |
| 10:37AM | 18 |
| 10:37AM | 19 |
| 10:37AM | 20 |
| 10:37AM | 21 |
| 10:37AM | 22 |
| 10:37AM | 23 |
| 10:37AM | 24 |
| 10:37AM | 25 |

1  these elements that we just talked about, okay.

2      So they're not going to talk for the next two hours, I

3  promise you.  I would be surprised if they take more than five

4  minutes, okay, because it's a summary of what the evidence would

5  have shown; and that summary has to hit all of these points, okay?

6      THE DEFENDANT:  Okay.

7      THE COURT:  When they're done, I'm going to ask you "Do

8  you agree that what they said is correct?"  If you don't agree,

9  then we'll talk about what you didn't agree with.  Maybe you don't

10 agree with it and maybe the stuff you don't agree with doesn't

11 matter because the evidence is still enough.  Maybe you disagree

12 with something that would be something that would be problematic

13 because I am not going to accept your guilty plea unless you agree

14 to sufficient facts that would have been enough for a jury to have

15 found you guilty because you can't plead as a matter of

16 convenience, right?  I can only accept the plea, if that's what

17 you decide to do when this is all over, if there are enough facts

18 that support a conviction on each count.  Okay?

19     THE DEFENDANT:  Yes.

20     THE COURT:  Do you understand that?

21     THE DEFENDANT:  Yes.

22     THE COURT:  Okay.  Government, you may proceed.

23     MR. BAILYN:  Thank you, Your Honor.  I'll go slowly.  I

24 have been admonished by the court reporter in different ways.

25     THE COURT:  I'm sure you've been admonished by me, too.

10:38AM   1          MR. BAILYN:  That's what I mean.

10:38AM   2          THE COURT:  Yes, correct.

10:38AM   3          MR. BAILYN:  In June and August of 2023 the defendant

10:38AM   4   applied for home equity lines of credit.  I'll refer to these as

10:38AM   5   HELOC, H-E-L-O-C.  These HELOCs were against a property in Miami,

10:38AM   6   Florida.  At trial the government would show evidence of five

10:38AM   7   HELOC applications, and I'll be more specific.

10:38AM   8          On June 6, 2023, the defendant submitted a HELOC

10:39AM   9   application in the approximate amount of $350,000 to U.S. Bank.

10:39AM  10          On June 30, 2023, the defendant submitted a HELOC

10:39AM  11   application to Lower.  That's, like, L-o-w-e-r, LLC, in the

10:39AM  12   approximate amount of $350,000.

10:39AM  13          On July 8, 2023, the defendant submitted a HELOC

10:39AM  14   application to Figure Lending in the approximate amount of

10:39AM  15   $400,000.

10:39AM  16          On July 11, 2023, the defendant represented to Figure

10:40AM  17   Lending that the property that I referenced in Miami, Florida was

10:40AM  18   free and clear of any legal encumbrances, mortgages, or liens.

10:40AM  19   That representation was false.  The property had been encumbered,

10:40AM  20   and the defendant knew that.

10:40AM  21          On July 26, 2023, the defendant represented to Lower LLC

10:40AM  22   that the property had no prior mortgages and that the defendant

10:41AM  23   had not been issued credit by Figure Lending.  Again that

10:41AM  24   representation was false, and the defendant knew that.

10:41AM  25          In fact, the property had prior mortgages; and in fact,

10:41AM  1    the defendant had been issued credit by Figure Lending.

10:41AM  2          The applications that I referenced on June 6th,

10:41AM  3    June 30th, and July 11th of 2023 caused a wire in interstate

10:41AM  4    commerce from the Southern District of Florida to outside the

10:41AM  5    state of Florida.

10:41AM  6          The proceeds of the HELOC applications were deposited

10:41AM  7    into an account at Amerant Bank in the defendant's name.  The

10:41AM  8    account ends in 0406.  Amerant Bank is a financial institution

10:42AM  9    whose accounts are insured by the FDIC.

10:42AM  10          On July 25, 2023, the defendant purchased a cashier's

10:42AM  11    check payable to Boss Group Ministries in the approximate amount

10:42AM  12    of $35,000, which represented the proceeds of criminal activity;

10:42AM  13    specifically, wire fraud.

10:42AM  14          On August 1st, 2023, the defendant purchased a cashier's

10:42AM  15    check in the approximate amount of $50,000, 10,000 of which

10:42AM  16    represented the proceeds of criminal activity.

10:42AM  17          Those transactions took place in Miami, Florida.

10:42AM  18          THE COURT:  And let me ask the government a question.

10:42AM  19          The application to Figure Lending had the false

10:42AM  20    representation that the property was free and clear, correct?

10:42AM  21          MR. BAILYN:  So, Your Honor, yes, both to Figure Lending

10:43AM  22    and as well as to Lower, the defendant made false representations

10:43AM  23    that the property was free and clear.

10:43AM  24          THE COURT:  What was the false representation for the

10:43AM  25    application to U.S. Bank and the application to Lower, LLC?

```
10:43AM    1          MR. BAILYN:  So for Lower, LLC, Your Honor, it was a
10:43AM    2    representation that the property was free and clear.  So there is
10:43AM    3    the application, there's follow-along questions.
10:43AM    4          What are charged as the counts are the wires for the
10:43AM    5    applications.  In the manner and means we described what's false.
10:43AM    6          And U.S. Bank, and I am concerned the defendant may
10:43AM    7    disagree with this, but there was a submission of false and
10:43AM    8    fraudulent tax returns.  I can be more specific, but I don't think
10:43AM    9    it's necessary for the prima facie case.
10:43AM   10          THE COURT:  It's pled.  I mean, I just want it on the
10:43AM   11    record that that was the plea.  But the government's evidence at
10:44AM   12    trial would be that the false representations that were material
10:44AM   13    that were made with the June 6th application to U.S. Bank, which
10:44AM   14    is a count that he is pleading guilty to, were the false and
10:44AM   15    fraudulent tax returns; correct?
10:44AM   16          MR. BAILYN:  That's correct, Your Honor.
10:44AM   17          THE COURT:  Okay.  All right.
10:44AM   18          MR. KIRLEW:  So, Your Honor, while I agree with Mr.
10:44AM   19    Bailyn's recitation of the facts, there are a couple, I guess,
10:44AM   20    minor disagreements.
10:44AM   21          I believe the one to Figure, which was the one that was
10:44AM   22    first in time, I believe, the one that was first in time, there
10:44AM   23    had not been any encumbrances on the property as far as that
10:44AM   24    misrepresentation.
10:44AM   25          However, as Mr. Bailyn pointed out and I didn't mention
```

10:44AM   1   it initially, there were other misrepresentations on that

10:44AM   2   application.  The first in time one, I believe, regarding tax

10:44AM   3   returns, income, employment, and things as well.  He didn't

10:44AM   4   mention that initially, but those were on the applications.

10:45AM   5        And those things were all gone through with Mr. Davis,

10:45AM   6   explaining to him that the jury does not have to believe it was

10:45AM   7   necessarily just this false representation; they could say it

10:45AM   8   could be this one, and any one that a juror would find or believe

10:45AM   9   would be sufficient for that juror to make a decision, even if

10:45AM   10  they disagreed on which one, as long as they agreed that there was

10:45AM   11  one made.

10:45AM   12       THE COURT:  Correct.  So there's three different

10:45AM   13  applications, right, and so for each count -- for each wire fraud

10:45AM   14  count there has to be a material misrepresentation.

10:45AM   15       The government's evidence is that as to that first one to

10:45AM   16  U.S. Bank, the false representations were tax returns.

10:45AM   17       Your lawyer says that there were other false

10:45AM   18  misrepresentations.  The government here is saying they would have

10:45AM   19  shown a jury that you submitted false information on these tax

10:45AM   20  returns, and that was the material misrepresentation.

10:45AM   21       And that as to the second and third application, the

10:46AM   22  Lower, LLC, and the Figure Lending, you made representations that

10:46AM   23  the property was free and clear and it was not.  That's the basis

10:46AM   24  for Count 1, Count 2, Count 3.

10:46AM   25       And then you got money from one of those institutions.

10:46AM 1   They're saying that money, right, was wire fraud -- proceeds of a

10:46AM 2   wire fraud.  When you go in and get the cashier's check, that's

10:46AM 3   Count 4, that's money laundering Count 4.  The second cashier's

10:46AM 4   check, that's money laundering Count 5.

10:46AM 5           That's what the government's evidence is.  Do you agree

10:46AM 6   with what the evidence was; what the government just said?

10:46AM 7           THE DEFENDANT:  Let me talk to my lawyer for a couple of

10:46AM 8   seconds.

10:46AM 9           THE COURT:  You can talk to him as long as you want.  I

10:46AM 10  need to hear when you're done with him that you agree that you

10:46AM 11  made a material misrepresentation as to each one of those three

10:46AM 12  because it's three different counts, and that you knew that that

10:46AM 13  money that you got, you shouldn't have gotten it, and then you

10:46AM 14  withdraw the two cashier's checks.

10:47AM 15          So talk to your lawyer for as long as you need.

10:47AM 16          THE DEFENDANT:  Okay.

10:47AM 17          (Brief pause for the defendant confer with his counsel.)

10:50AM 18          MR. KIRLEW:  Judge, just so we're back on the record and

10:50AM 19  the record is clear, I did open up all the loan applications and

10:51AM 20  the government trial exhibits and I went through them with Mr.

10:51AM 21  Davis to show him how each exhibit -- as I mentioned before, the

10:51AM 22  jury is not bound by Mr. Bailyn's recitation, right.  They could

10:51AM 23  look at this exhibit in its entirety and say "Well, I believe this

10:51AM 24  happened," and that would be enough for them to make a decision

10:51AM 25  on.

10:51AM 1      THE COURT:  The government has its applications.  They

10:51AM 2  would have submitted that to a jury; and if the application has a

10:51AM 3  material misrepresentation, that would be enough for a jury to

10:51AM 4  find you guilty of wire as to Counts 1, 2, and 3.  It doesn't mean

10:51AM 5  they would; it just means there is enough there that a jury could

10:51AM 6  do that.

10:51AM 7      So my question to you is, do you agree, sir, that you

10:51AM 8  made a material misrepresentation in each of those three

10:51AM 9  applications?

10:51AM 10      THE DEFENDANT:  Yes.

10:51AM 11      THE COURT:  And you withdrew those two amounts from the

10:51AM 12  proceeds that you got from that loan, correct?

10:51AM 13      THE DEFENDANT:  Yes.

10:51AM 14      THE COURT:  Is there anything else you disagree with or

10:51AM 15  anything you disagree with from the government's recitation?

10:52AM 16      THE DEFENDANT:  I just wanted clarification, Your Honor.

10:52AM 17      THE COURT:  Okay.  So you agree that you did that, sir;

10:52AM 18  is that right?

10:52AM 19      THE DEFENDANT:  Yes.

10:52AM 20      THE COURT:  Mr. Kirlew, anything else that's necessary

10:52AM 21  for the record?

10:52AM 22      MR. KIRLEW:  No, Your Honor.  I believe with my

10:52AM 23  commentary I have made clear that I have gone through that and the

10:52AM 24  elements -- how the elements, I believe, would have been met by

10:52AM 25  the government.

10:52AM  1      THE COURT:  Well, he's also on the record now said, and

10:52AM  2  correct me if I'm wrong, sir, you agree you made a

10:52AM  3  misrepresentation on the first application, the second

10:52AM  4  application, and the third application; and you agree that you

10:52AM  5  made those two withdrawals, correct?

10:52AM  6      THE DEFENDANT:  Yes.

10:52AM  7      THE COURT:  All right.  Government, anything else?  Is

10:52AM  8  that sufficient on the factual proffer?

10:52AM  9      MR. BAILYN:  I'm sorry, Your Honor.  I didn't understand

10:52AM  10  the question.  Oh, is that sufficient?

10:52AM  11      THE COURT:  Is it sufficient for the government?

10:52AM  12      MR. BAILYN:  Yes.  Thank you.

10:52AM  13      THE COURT:  All right, sir.  So I've looked or I've

10:52AM  14  listened, right, to the government's evidence, I've listened to

10:52AM  15  what you've said and what you have agreed to, and I find that that

10:52AM  16  is sufficient to support a guilty plea to Counts 1, 2, 3, 4, and

10:53AM  17  5.  That's my finding; that it's sufficient, okay.

10:53AM  18      Those are all the questions I had for you, okay.  Have

10:53AM  19  you had enough time to think about what you want to do?

10:53AM  20      THE DEFENDANT:  Yes.

10:53AM  21      THE COURT:  Have you had enough time to talk to your

10:53AM  22  lawyer about what you want to do?

10:53AM  23      THE DEFENDANT:  Yes.

10:53AM  24      THE COURT:  I know that the other lawyer that was going

10:53AM  25  to make an appearance this morning, he's been here during this

50

10:53AM  1    entire colloquy, do you need to talk to him?  Do you need to ask

10:53AM  2    him anything before we proceed?

10:53AM  3            THE DEFENDANT:  Yes, I'll ask him something.

10:53AM  4            THE COURT:  Go ahead.  He's there; he's available.

10:53AM  5    Counsel.

10:53AM  6            (Brief pause for the defendant to confer with Nashid

10:54AM  7             Sabir.)

10:54AM  8            MR. KIRLEW:  Ready to proceed, Your Honor.

10:54AM  9            THE COURT:  Mr. Kirlew, is there anything that I have

10:54AM  10   omitted that I needed to advise your client?

10:54AM  11           MR. KIRLEW:  No, Your Honor.

10:54AM  12           THE COURT:  Government, have I omitted anything?

10:54AM  13           MR. BAILYN:  No, Your Honor.

10:54AM  14           THE COURT:  If I have --

10:54AM  15           MR. BAILYN:  I'm going through my head of anything that

10:54AM  16   could be said in a plea colloquy and trying to think if there was

10:54AM  17   something, but I think that Your Honor said everything.

10:54AM  18           THE COURT:  Okay.  All right.  Sir, I am going to go

10:54AM  19   through each count now and ask you what your plea is to each

10:54AM  20   count.

10:54AM  21           As to Count 1, wire fraud, how do you plead; guilty or

10:54AM  22   not guilty?

10:54AM  23           THE DEFENDANT:  Guilty.

10:54AM  24           THE COURT:  As to Count 2, wire fraud, do you plead

10:54AM  25   guilty or not guilty?

| | |
|---|---|
| 10:54AM | 1 |
| 10:55AM | 2 |
| 10:55AM | 3 |
| 10:55AM | 4 |
| 10:55AM | 5 |
| 10:55AM | 6 |
| 10:55AM | 7 |
| 10:55AM | 8 |
| 10:55AM | 9 |
| 10:55AM | 10 |
| 10:55AM | 11 |
| 10:55AM | 12 |
| 10:55AM | 13 |
| 10:55AM | 14 |
| 10:55AM | 15 |
| 10:55AM | 16 |
| 10:55AM | 17 |
| 10:55AM | 18 |
| 10:55AM | 19 |
| 10:55AM | 20 |
| 10:55AM | 21 |
| 10:55AM | 22 |
| 10:55AM | 23 |
| 10:55AM | 24 |
| 10:55AM | 25 |

1      THE DEFENDANT:  Guilty.

2      THE COURT:  Count 3, wire fraud, is your plea guilty or

3 not guilty?

4      THE DEFENDANT:  Guilty.

5      THE COURT:  Your plea as to Count 4, the money

6 transaction count, guilty or not guilty?

7      THE DEFENDANT:  Guilty.

8      THE COURT:  And Count 5, guilty or not guilty?  That's

9 the other money transaction.

10      THE DEFENDANT:  Guilty.

11      THE COURT:  Mr. Kirlew, are you satisfied that he

12 understands the charges and the consequences?

13      MR. KIRLEW:  Yes, Your Honor.

14      THE COURT:  Government, is there any reason I should not

15 accept the plea?

16      MR. BAILYN:  No, Your Honor.

17      THE COURT:  All right.  I find the defendant is alert and

18 intelligent.  He's fully competent and capable of entering a plea.

19 He's aware of the nature of the charges and the consequences of

20 the plea.  And I find that his plea is knowing and voluntary, and

21 it is supported by an independent basis in fact, containing each

22 element of the offense.

23      I also find that he has freely, voluntarily, and

24 intelligently entered this plea with no promises and no threats

25 and without any kind of mental impediment.

10:55AM  1       I find he has had the advice and counsel of a competent

10:55AM  2  lawyer with whom he is satisfied.

10:56AM  3       I accept your plea of guilty as to Counts 1 through 5,

10:56AM  4  and adjudicate you guilty as to Counts 1 through 5.

10:56AM  5       The next step is the preparation of the presentence

10:56AM  6  investigation report that I talked to you about.  Probation is

10:56AM  7  going to reach out to your lawyer -- to Mr. Kirlew and you're

10:56AM  8  going to set up a meeting with them.

10:56AM  9       You don't speak to probation without your lawyer present

10:56AM 10  that's a process.  You have a right to counsel.  You're going to

10:56AM 11  be there with him.  Look, it is really important that you

10:56AM 12  cooperate with probation, right, because the more information I

10:56AM 13  have about you, typically the better, right.  And the information,

10:56AM 14  obviously, has to be accurate, so you want probation to have good

10:56AM 15  information and you want to be truthful, you want to cooperate.

10:56AM 16       That's going to impact also whether I ultimately decide

10:56AM 17  if you're entitled to acceptance of responsibility credit, right?

10:56AM 18       THE DEFENDANT:  Yes.

10:56AM 19       THE COURT:  And so you want to cooperate and obviously be

10:56AM 20  truthful with probation.

10:56AM 21       They're going to give that report back to your lawyer

10:56AM 22  first in draft.  Let's say they got your mother's name wrong

10:57AM 23  because they're going to ask your parents' names, siblings' names,

10:57AM 24  that kind of thing.  Sometimes they make a mistake or sometimes

10:57AM 25  there is an error and your lawyer can talk to them and they fix

10:57AM  1   that; there is no issue.  You will have an opportunity to do that,

10:57AM  2   okay.

10:57AM  3        But sometimes they're like, "No, this is the information

10:57AM  4   we have" or "We have this information from your school" or "We got

10:57AM  5   this information from your mother" or "We got this information

10:57AM  6   from the government and we think it's right," okay, and you

10:57AM  7   disagree.  That's fine.  I'll get the report.  You can file an

10:57AM  8   objection, all right, and then I will listen to that objection at

10:57AM  9   sentencing.  I'll listen to your lawyer, I'm going to listen to

10:57AM  10  the government, and I also will listen to you personally, right.

10:57AM  11  You get the right to address me before I sentence you.

10:57AM  12       At the time of sentencing if there's people who want to

10:57AM  13  support you -- I know there are people here for you today -- they

10:57AM  14  can come to your sentencing.  Your sentencing is a public event,

10:57AM  15  right.  It's an open courthouse.  They can come and be here and

10:58AM  16  support you at sentencing.

10:58AM  17       If they want to say anything to me, there's two ways of

10:58AM  18  doing that.  One way is by submitting a letter.  I'm going to ask

10:58AM  19  that any letters of support be given to your lawyer; not be sent

10:58AM  20  to me directly.  Why?  Because when you send something to me by

10:58AM  21  email and sometimes people find the Court's email, you send it to

10:58AM  22  my email, that's not part of the court record, so there is no

10:58AM  23  record being made, okay.  And if they send it by U.S. mail to the

10:58AM  24  clerk's office even, it may not get here in time, okay, because

10:58AM  25  our mail goes, obviously, through security protocols.  So you want

54

10:58AM 1   everyone who wants to support you, if they want to do it in

10:58AM 2   writing, let Mr. Kirlew know because then he files those letters

10:58AM 3   in the court record and I read them all.

10:58AM 4          At the time of sentencing if someone wants to speak on

10:58AM 5   your behalf, I will hear from anyone who wants to speak on your

10:58AM 6   behalf.  Okay.  But it also not a free-for-all, so you need to

10:58AM 7   talk to Mr. Kirlew about that so that he knows who is going to

10:59AM 8   speak on your behalf and has an idea of how many people that is so

10:59AM 9   that I can make sure to have enough time for your sentencing,

10:59AM 10  okay.  I don't want to rush people if they want to be heard, if

10:59AM 11  they feel the information they have is information that I should

10:59AM 12  consider before your sentencing, all right.

10:59AM 13         And as I said, at the time of sentencing if the victim in

10:59AM 14  the case, if the banking institutions have a statement they want

10:59AM 15  to make or information, I have to hear them, so I'll hear them,

10:59AM 16  I'll hear from the government, I will hear from your lawyer, and

10:59AM 17  I'll hear from you; and at the end of the day, of course, I make

10:59AM 18  the sentencing decision that I need to make in this case.

10:59AM 19         So I'll refer you pursuant to Rule 32(c)(1) to the office

10:59AM 20  of probation for the preparation of the report.  I'm going to

10:59AM 21  remind your lawyer that when we get the sentencing date from my

10:59AM 22  courtroom deputy, the written order will have deadlines when

10:59AM 23  things are due.  You have to follow the deadlines.  Government, if

10:59AM 24  you need more time, you have to file a motion.  If you don't file

11:00AM 25  a motion, I disregard what you say; simple as that.

11:00AM  1    Defense, if you need more time, tell me you need more

11:00AM  2  time.  If you file something at the last minute, I'm not going to

11:00AM  3  disregard it, right, but I may have to continue the sentencing

11:00AM  4  because I want to have time to think things through and to really

11:00AM  5  have an idea of what I think should happen and what the law says,

11:00AM  6  and I want some time to consider that.  I don't like to be rushed

11:00AM  7  at sentencing, so I don't appreciate and I don't like a bunch of

11:00AM  8  last-minute filings because if I see that, two things could

11:00AM  9  happen; either the government could then ask for more time to

11:00AM  10  consider it and I'm going to give it to them, or I may just

11:00AM  11  continue the sentencing because I need more time to consider it.

11:00AM  12    I will give you the time you need.  Look, I'm not going

11:00AM  13  to continue the sentencing for a year; but if you need another

11:00AM  14  week or two or something, like, I will give you that kind of time,

11:00AM  15  I will give your lawyer that kind of time, okay.

11:00AM  16    I don't know if you'll have a term of incarceration; but

11:00AM  17  if you are going to be sentenced to a term of incarceration, you

11:01AM  18  need to be ready to start serving that term of incarceration at

11:01AM  19  the time of your sentencing.  I usually don't give people, like,

11:01AM  20  more time.  If for some reason you need more time, then your

11:01AM  21  lawyer will also have to file a motion.  That's also in my order.

11:01AM  22    Let me hear from the government with respect to bond

11:01AM  23  because now you've pled guilty, and so the standards are

11:01AM  24  different.  Let me hear from the government as to whether or not

11:01AM  25  you should continue to have a bond till the time of sentencing or

11:01AM  1    if they're going to make any requests to modify your bond.  Let me

11:01AM  2    hear from the government.

11:01AM  3             MR. BAILYN:  Your Honor, we defer to the Court.  The

11:01AM  4    government has no position and doesn't object to the defendant

11:01AM  5    remaining on pretrial release.

11:01AM  6             THE COURT:  I am going to leave the same bond in place.

11:01AM  7             Now, let me be very clear to you.  From now to the time

11:01AM  8    of sentencing, this is no time to even run over your neighbor's

11:01AM  9    cat, okay?  Not a good idea to start getting involved in anything,

11:01AM  10   okay.

11:01AM  11            THE DEFENDANT:  Right.

11:01AM  12            THE COURT:  Because if you violate any conditions of that

11:01AM  13   bond, and I mean any condition, you stop calling the pretrial

11:02AM  14   services officer, if I hear you violated that bond, I'm just going

11:02AM  15   to have the marshals pick you up and we will be done with the bond

11:02AM  16   conditions.  You've had no issues that I know of on the bond, so

11:02AM  17   it shouldn't be a big deal to you.  But just know that from now to

11:02AM  18   the time of sentencing, I'm looking at your conduct all the way to

11:02AM  19   the day I sentence you.  So you do not want to be in a position,

11:02AM  20   right, where you're going to have a bond violation of any kind.

11:02AM  21            If you're having trouble with the pretrial services

11:02AM  22   officer for some reason or you need your bond to be modified,

11:02AM  23   whatever, talk to Mr. Kirlew, right; but don't go off and do

11:02AM  24   anything on your own or get up too close to that line on the bond

11:02AM  25   because if I hear you violated it, I will revoke it in a minute.

57

| | | |
|---|---|---|
| 11:02AM | 1 | Okay.  Do you understand that? |
| 11:02AM | 2 | THE DEFENDANT:  Yes. |
| 11:02AM | 3 | THE COURT:  What's the sentencing date, Donna? |
| 11:02AM | 4 | THE COURTROOM DEPUTY:  Judge, it's Thursday, July 24th, |
| 11:02AM | 5 | at 10:00 a.m. |
| 11:02AM | 6 | THE COURT:  All right, is that date fine for the |
| 11:03AM | 7 | government? |
| 11:03AM | 8 | MR. BAILYN:  It's fine, Your Honor. |
| 11:03AM | 9 | THE COURT:  Mr. Kirlew? |
| 11:03AM | 10 | MR. KIRLEW:  Judge, if I may request an afternoon on |
| 11:03AM | 11 | Thursday only because that's probably my busiest day in state |
| 11:03AM | 12 | court is a Thursday morning. |
| 11:03AM | 13 | THE COURT:  Not a problem. |
| 11:03AM | 14 | THE COURTROOM DEPUTY:  We can do 2:00 p.m. |
| 11:03AM | 15 | MR. KIRLEW:  That's fine.  That's much better. |
| 11:03AM | 16 | THE COURT:  And again, Mr. Kirlew, once you get -- it's |
| 11:03AM | 17 | hard for him to know right, once he gets the pretrial services |
| 11:03AM | 18 | report, if you need more time to look at it to object, I will give |
| 11:03AM | 19 | you more time. |
| 11:03AM | 20 | MR. KIRLEW:  Thank you, Judge. |
| 11:03AM | 21 | THE COURT:  Just don't surprise me.  I don't like the |
| 11:03AM | 22 | last-minute stuff as you know probably by now, and I don't like to |
| 11:03AM | 23 | be surprised.  So sentencing is July 24th at 2:00 p.m. |
| 11:03AM | 24 | One other thing that's outstanding then is the motion to |
| 11:03AM | 25 | enter your appearance, counsel.  Do you still want to enter an |

| | |
|---|---|
| 11:03AM | 1 |
| 11:03AM | 2 |
| 11:03AM | 3 |
| 11:03AM | 4 |
| 11:03AM | 5 |
| 11:03AM | 6 |
| 11:03AM | 7 |
| 11:04AM | 8 |
| 11:04AM | 9 |
| 11:04AM | 10 |
| 11:04AM | 11 |
| 11:04AM | 12 |
| 11:04AM | 13 |
| 11:04AM | 14 |
| 11:04AM | 15 |
| 11:04AM | 16 |
| 11:04AM | 17 |
| 11:04AM | 18 |
| 11:04AM | 19 |
| 11:04AM | 20 |
| 11:04AM | 21 |
| 11:04AM | 22 |
| 11:04AM | 23 |
| 11:04AM | 24 |
| 11:04AM | 25 |

1  appearance for purposes of sentencing, or are you withdrawing your
2  motion to appear?
3            MR. SABIR:  Judge, do I have to make a decision right
4  now?
5            THE COURT:  I'm sorry?
6            MR. SABIR:  Do I have to make a decision right now?
7            THE COURT:  This is what I am going to do.  I will deny
8  your motion to appear.  I will deny the motion to continue the
9  trial, obviously.  The motion to dismiss the indictment, again,
10 you're not counsel of record, so I'm going to deny that.
11           If you want to appear, go ahead, file another one.  All
12 right.  That way the record is clean as of today.  Otherwise, it
13 just sits out there, and I don't know when it is that you want me
14 to address it; so you have to talk, obviously, to the defendant
15 about whether he wants you to make an appearance for sentencing.
16 If he wants to do that, refile your motion, and then I'll consider
17 it.  I think that makes for a cleaner record.  Okay?
18           MR. SABIR:  Thank you, Judge.
19           THE COURT:  You're also, of course, welcome to be here at
20 the time of sentencing.  You're also welcome in the courthouse.
21 But as a lawyer of record, I'll let you make another motion when
22 you're ready to make it.  Okay?
23           MR. SABIR:  Yes, Judge.  Thank you.
24           THE COURT:  Anything else on behalf of the United States?
25           MR. BAILYN:  No, Your Honor.

| | | |
|---|---|---|
| 11:04AM | 1 | There was a motion filed in the last hour.  It appears to |
| 11:04AM | 2 | be a pro se motion; a motion to recuse, alleging conflict of |
| 11:05AM | 3 | interest with the Court. |
| 11:05AM | 4 | THE COURT:  I haven't seen the motion. |
| 11:05AM | 5 | MR. BAILYN:  I just got it on CM/ECF.  Beyond that, there |
| 11:05AM | 6 | are no pending motions. |
| 11:05AM | 7 | THE COURT:  If it's a motion that was filed by anybody |
| 11:05AM | 8 | other than Mr. Kirlew, then I'm going to strike it because the |
| 11:05AM | 9 | local rules are quite clear that only when somebody has a lawyer, |
| 11:05AM | 10 | only the lawyer can file.  In fact, even you, sir, personally |
| 11:05AM | 11 | can't file things.  You have a lawyer; your lawyer has to file |
| 11:05AM | 12 | things.  That's a local rule. |
| 11:05AM | 13 | So I haven't seen it, but there are two other motions |
| 11:05AM | 14 | that were filed earlier or at least one other.  People can't file |
| 11:05AM | 15 | things on the record on your behalf; only your lawyer can.  Okay? |
| 11:05AM | 16 | THE DEFENDANT:  Yes. |
| 11:05AM | 17 | THE COURT:  Do you understand that? |
| 11:05AM | 18 | THE DEFENDANT:  Yes. |
| 11:05AM | 19 | THE COURT:  Okay.  Anything else on behalf of the United |
| 11:05AM | 20 | States? |
| 11:05AM | 21 | MR. BAILYN:  No, Your Honor.  Thank you. |
| 11:05AM | 22 | THE COURT:  Anything else, Mr. Kirlew? |
| 11:05AM | 23 | MR. KIRLEW:  No, Judge. |
| 11:05AM | 24 | THE COURT:  Sir, do you have any questions for me or |
| 11:05AM | 25 | anything else? |

11:05AM  1          THE DEFENDANT:  No, Your Honor.

11:05AM  2          THE COURT:  All right.  We'll see you at sentencing.

11:05AM  3  Thank you.

11:05AM  4          (Proceedings recessed at 11:05 a.m.)

        5                  C E R T I F I C A T E

        6      I hereby certify that the foregoing is an accurate

        7  transcription of the proceedings in the above-entitled matter.

        8

        9

       10  DATE:  8/11/25          /s/Vernita Allen-Williams
                                   VERNITA ALLEN-WILLIAMS, RMR, FCRR
       11                          Official Court Reporter
                                   United States District Court
       12                          Southern District of Florida
                                   400 North Miami Avenue
       13                          Miami, Florida 33128
                                   (305) 523-5938
       14

       15

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25